UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ANALOGIC CORPORATION and
BK MEDICAL SYSTEMS, INC.,

**MEMORANDUM & ORDER**

Plaintiffs,

-against-                                                12-CV-1428 (SLT)(VVP)

GREGORY MANUELIAN,
ANIE M. MANUELIAN, and
HSBC MORTGAGE CORPORATION (USA),

Defendants.
-----------------------------------------------------------------x

**TOWNES, United States District Judge:**

Plaintiffs Analogic Corporation ("Analogic") and BK Medical Systems, Inc. ("BK") (collectively, "Plaintiffs") bring this diversity action against Gregory and Anie M. Manuelian (collectively, "Defendants"), alleging the fraudulent conveyance of an interest in real property. Plaintiffs now move for summary judgment as to their second claim for relief under New York Debtor and Creditor Law ("DCL") § 273. Defendants argue that this claim is time-barred. For the reasons set forth below, Plaintiffs' motion is granted.

## I.   BACKGROUND

### A.   Facts

The following facts are not in dispute unless otherwise indicated.

#### 1.   Criminal Scheme

Analogic, through its Danish subsidiary, manufactures diagnostic ultrasound systems for medical professionals. (56.1 Stmt. ¶ 2). These products are imported into the United States and distributed by BK, a subsidiary of the Danish company. (56.1 Stmt. ¶ 3). In 1980, BK retained Marquis Clearance Services Ltd. ("Marquis") as a customs broker for its imports. (56.1 Stmt. ¶

12). An employee of Marquis, Gregory Manuelian ("Gregory") became a licensed customs broker in 1985, an officer of Marquis in 1993, and sole owner in 2006. (56.1 Stmt. ¶¶ 4-6). Gregory's role as a customs broker was to help clients "clear" goods through customs, which often included preparing paper or electronic submissions as well as calculating and paying taxes or duties for the clients' shipments. (56.1 Stmt. ¶ 7). Gregory, on behalf of Marquis, typically paid any duties and routine charges on the imported goods and then faxed an invoice to BK, listing the goods and pre-payments. (56.1 Stmt. ¶ 13). Based upon these invoices, BK reimbursed Marquis for the duties and paid the brokerage service fee. (56.1 Stmt. ¶ 14). Gregory would then mail BK a copy of the invoice and what purported to be a copy of the customs form filed with the appropriate federal agency. (56.1 Stmt. ¶ 15).

In 1996, the United States began phasing out duties on such medical equipment exported from Denmark, and by 1999 these products could be imported duty free. (56.1 Stmt. ¶ 16). Exploiting this change, Gregory engaged in a scheme from 1996 through 2006 to defraud BK by representing – through false invoices and customs forms – that Marquis was paying duties that were, in reality, no longer due. (56.1 Stmt. ¶¶ 17-19). During the course of this scheme, Gregory induced BK to pay $1,188,886.97 to Marquis. (56.1 Stmt. ¶ 25). From 1996 through 2008, Gregory personally withdrew and depleted the money he stole from Plaintiffs. (56.1 Stmt. ¶ 26).

2.   **Prior Litigation**

In December 2006, Plaintiffs discovered the irregularities during a review of export costs and thereafter contacted federal criminal authorities. (56.1 Stmt. ¶ 27). In October 2008, Gregory was arrested and indicted in the United States District Court for the District of Massachusetts on eight counts of wire fraud and four counts of forgery of customs forms.

Gregory pleaded guilty to all counts. (56.1 Stmt. ¶ 29). In addition to a term of imprisonment, Gregory was ordered to make restitution of $1,188,886.97 plus interest to Analogic and to pay an assessment of $1,200. (56.1 Stmt. ¶¶ 31, 32). Gregory surrendered to custody in March 2010 and in June 2010, the court denied his motion to alter the judgment. (56.1 Stmt. ¶¶ 34, 35). Plaintiffs claim that Gregory has failed to make any restitution, but for $88,000 turned over from his IRA account; Gregory asserts that he has made $95,451 available from his assets. (56.1 Stmt. & Counterstmt. ¶ 36).

Plaintiffs subsequently commenced an action in this Court seeking to hold Marquis liable for losses due to the crimes committed by Gregory, and on September 7, 2011, the Court granted a default judgment against Marquis for $1,248,103.30. (See 10-CV-3801 (SJ) (Docket Nos. 16, 17)). To date, no part of that judgment has been paid.

### 3. The Property

On September 14, 1989, Gregory took title to real property located at 19 Oaktree Lane, Manhasset, New York (the "Property"), which included a single family house. (56.1 Stmt. & Counterstmt. ¶ 44). On March 6, 2002, while conducting his scheme to defraud Plaintiffs, Gregory executed a deed purporting to convey the Property to his wife, Anie M. Manuelian ("Anie") and himself, as tenants by the entirety. (56.1 Stmt. ¶ 45). The deed was recorded, but not delivered to or accepted by Anie. (56.1 Stmt. ¶ 46). Indeed, Anie had no knowledge of the deed until September 2007, when Gregory told her about it in the wake of his arrest. (56.1 Stmt. ¶ 47).

At the time of transfer of interest to Anie, Gregory was insolvent or was thereby rendered insolvent. (56.1 Stmt. ¶ 51). Additionally, Gregory did not receive "fair consideration" as defined in DCL § 272 for his conveyance of an interest in the Property to Anie. (56.1 Stmt. ¶

3

52). On May 12, 2011, Plaintiffs filed a transcript of the judgment against Gregory with the Nassau County Clerk and thereby acquired a lean on all real property located in that county in which Gregory has an interest. (56.1 Stmt. ¶ 42). As of 2010, the Property had an assessed market value of $1,189,400, with a home equity line of credit balance of approximately $170,000. (56.1 Stmt. ¶ 50).

### B. Procedural History

On March 23, 2012, Plaintiffs commenced this diversity action against Defendants as well as HSBC Mortgage Corporation (USA) ("HSBC"), asserting five claims under New York Debtor and Creditor Laws. (Docket No. 1). On January 18, 2013, Plaintiffs dismissed all claims against HSBC. (Docket No. 14). Now before the Court is Plaintiffs' motion for summary judgment only as to their second claim under § 273, seeking to set aside as a fraudulent conveyance the deed by which Gregory conveyed an interest in the Property to his wife, Anie. (Docket No. 19).

## II. LEGAL STANDARD

When evaluating a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all ambiguities in his favor. See Niagara Mohawk Power Corp. v. Jones Chem. Inc., 315 F.3d 171, 175 (2d Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). A court's role "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Goldberg & Connolly v. N.Y. Cmty. Bancorp, Inc., 565 F.3d 66, 71 (2d Cir. 2009). Indeed, summary judgment is appropriate only when "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); Doninger v. Niehof, 642 F.3d 334, 344 (2d Cir. 2011).

III.     DISCUSSION

   A.     DCL § 273

In their second cause of action, Plaintiffs claim that the transfer of the Property "was fraudulent as to both present and future creditors of Gregory, including plaintiffs," in violation of § 273, and should be set aside. (Compl. ¶ 67). Section 273 provides in relevant part that:

> Every conveyance made . . . by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made . . . without a fair consideration.

To prevail on a § 273 constructive fraud claim, a plaintiff therefore must show by a preponderance of the evidence: "(1) a conveyance (2) without fair consideration (3) by a person who is insolvent or who becomes insolvent as a consequence of the transfer." Lippe v. Bairnco Corp., 249 F. Supp. 2d 357, 376 (S.D.N.Y. 2003) (citing United States v. McCombs, 30 F.3d 310, 323 (2d Cir. 1994)). Defendants concede that Plaintiffs have established these elements. (See 56.1 Stmt. ¶¶ 45, 51, 52).[1] Defendants argue, however, that Plaintiffs' § 273 claim is time-barred.

---

[1] To the extent Gregory insists he had no "intention to frustrate plaintiffs' ability to recoup the moneys he admittedly took from them," (Defs. Opp. at 2), that argument is of no moment to the § 273 claim. The "good faith" component of the fair consideration inquiry "is the good faith of the transferee, as opposed to, in the case of actual fraud under [DCL] § 276, the good faith of the transferor." Lippe, 249 F. Supp. 2d at 377 (citing HBE Leasing Corp. v. Frank, 61 F.3d 1054, 1059 n.5 (2d Cir. 1995)) (emphasis added). See DCL § 272.

5

**B.     Statute of Limitations**

Claims brought pursuant to § 273 are governed by a six-year statute of limitations period which accrues at the time of the fraudulent conveyance. Federal Nat. Mortg. Ass'n v. Olympia Mortg. Corp., No. 04-CV-4971 (NG) (MDG), 2011 WL 9933496, at *7 (E.D.N.Y. Aug. 5, 2011) (citing N.Y. C.P.L.R. 213(1); Citicorp Trust Bank, FSB, v. Makkas, 67 A.D.3d 950, 952 (2d Dep't 2009)). In this case, the parties dispute when, as a legal matter, the deed was actually conveyed. Defendants contend that conveyance occurred when Gregory executed the deed in March 2002, more than 10 years prior to the commencement of this action. (Defs. Opp. at 3). Plaintiffs argue that the claim instead accrued in September 2007, well within the six-year limitations period, when Anie first learned that Gregory had deeded her an interest in the Property as tenants by the entirety. (Pls. Mem. at 3).

Under New York Law, "[a] grant takes effect, so as to vest the estate or interest intended to be conveyed, only from its delivery; and all the rules of law, now in force, in respect to the delivery of deeds, apply to grants hereafter executed." Real Property Law § 244 (emphasis added). In 1909, when § 244 was enacted, the common law "contemplated that delivery encompassed both presentment and acceptance." M & T Real Estate Trust v. Doyle, 20 N.Y.3d 563, 567 (2013); see In re Smith, 469 B.R. 198, 202 (S.D.N.Y. 2012) ("In New York, a conveyance in property is valid if the deed is executed, acknowledged, delivered and accepted."); In re Ellison Associates, 63 B.R. 756, 761 (S.D.N.Y. 1983) ("New York requires an unconditional delivery of a deed by the grantor and an unconditional acceptance by the grantee to effect the transfer of title to property."); Ten Eyck v. Whitbeck, 156 N.Y. 341, 352 (1898) ("The delivery of a deed is essential to the transfer of title, and there can be no delivery without an acceptance by the grantee.").

Moreover, while "there is a presumption that a deed was delivered and accepted as of its date . . . this presumption must yield to opposing evidence." Janian v. Barnes, 284 A.D.2d 717, 718 (3rd Dep't 2001) (internal citations omitted). Such a determination typically involves an issue of fact. Id. In this case, however, it is undisputed that there was no acceptance by Anie – and therefore no conveyance – until at least September 2007, when Gregory first told her about the deed. Plaintiffs' § 273 fraudulent conveyance claim is therefore timely and, as the material facts establishing the claim are not contested, Plaintiffs' motion for summary judgment is granted. The Court need not consider the alternative grounds.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for summary judgment as to their second claim under New York Debtor and Creditor Law § 273 (Docket No. 19) is GRANTED. Accordingly, the deed by which defendant Gregory Manuelian conveyed an interest in the real property located at 19 Oaktree Lane, Manhasset, New York, to defendant Anie M. Manuelian as tenants by the entirety is hereby set aside to the extent necessary to satisfy Plaintiffs' judgment.

**SO ORDERED.**

_____/S/_____
SANDRA L. TOWNES
United States District Judge

Dated: March 31, 2014
      Brooklyn, New York